UNITED STATED DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA



FILED by_____D.C.
INTAKE
NOV 17 1999

CARLOS JUENKE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

SHERRY BERARD,

      Plaintiff,

vs.   CASE NO: 98-8823-CIV-LENARD

PARK AVENUE BBQ AND GRILLE
OF LAKE PARK, INC.; PARK AVENUE
BBQ & GRILLE of NORTH PALM BEACH,
INC.; PARK AVENUE BBQ AND GRILLE
OF WELLINGTON, INC.; PARK AVENUE
BBQ AND GRILLE OF TEQUESTA, INC.;
PARK AVENUE BBQ AND GRILLE OF
STUART, INC.; PARK AVENUE BBQ AND
GRILLE OF LAKE WORTH, INC.;
HAMMERHEADS SEA GRILLE, INC.;
HAMMERHEADS SEA GRILLE OF JUNO
BEACH, INC.; CHRISTOPHER WALTERS,
individually; and JOHN ERNST, individually,

      Defendants.
_____/

## AMENDED COMPLAINT

Plaintiff, **SHERRY BERARD**, by counsel, sues Defendants, **PARK AVENUE BBQ AND GRILLE OF LAKE PARK, INC.; PARK AVENUE BBQ & GRILLE of NORTH PALM BEACH, INC.; PARK AVENUE BBQ AND GRILLE OF WELLINGTON, INC.; PARK AVENUE BBQ AND GRILLE OF TEQUESTA, INC.; PARK AVENUE BBQ AND GRILLE OF STUART, INC.; PARK AVENUE BBQ AND GRILLE OF LAKE WORTH, INC.; HAMMERHEADS SEA GRILLE, INC.; HAMMERHEADS SEA GRILLE OF JUNO BEACH, INC.;** (hereafter referred to as Defendant "**PARK AVENUE**"); **CHRISTOPHER WALTERS**, individually,; and **JOHN ERNST**, individually, and states:

30/

## I. NATURE OF ACTION

1. This is an action brought by the Plaintiff for money damages and to enjoin the Defendants' sexually discriminatory practices as prohibited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., as well as the Fourteenth Amendment to the United States Constitution, and for common law assault, assault and battery, negligent retention, negligent supervision and invasion of privacy.

## II. JURISDICTION

2. Jurisdiction is founded upon Section 706 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-5; 28 U.S.C. Section 1331 and 1343(a)(4); Article 5, Sections 5 and 20, Florida Constitution; Sections 26.012, Florida Statutes; and the Fourteenth Amendment to the United States Constitution.

## III. PARTIES

3. Plaintiff is an adult, female citizen of the United States, and resident of Palm Beach County, Florida.

4. Defendant **"PARK AVENUE,"** consisting of eight corporate entities known as **PARK AVENUE BBQ AND GRILLE OF LAKE PARK, INC.; PARK AVENUE BBQ & GRILLE of NORTH PALM BEACH, INC.; PARK AVENUE BBQ AND GRILLE OF WELLINGTON, INC.; PARK AVENUE BBQ AND GRILLE OF TEQUESTA, INC.; PARK AVENUE BBQ AND GRILLE OF STUART, INC.; PARK AVENUE BBQ AND GRILLE OF LAKE WORTH, INC.; HAMMERHEADS SEA GRILLE, INC.; HAMMERHEADS SEA GRILLE OF JUNO BEACH, INC.**, are Subchapter S corporations organized and existing under the laws of the State of Florida, and were, at all times relevant hereto, Plaintiff's single employer within the meaning of Title VII.

2

5. Defendant, **CHRISTOPHER WALTERS**, is an adult male citizen of the United States and a resident of Palm Beach County, Florida.

6. Defendant, **JOHN ERNST**, is an adult male citizen of the United States and a resident of Palm Beach County, Florida.

## GENERAL ALLEGATIONS

7. On or about October 1991, Plaintiff was hired by Defendant **PARK AVENUE** as a waitress at Defendant's **Park Avenue BBQ & Grille Restaurant**, located at 754 Park Avenue, Lake Park, Florida (hereafter referred to as the **"Lake Park Store"**).

8. Defendant **PARK AVENUE** is owned by Dean Lavallee and Henry Worchester, III, and operates several **Park Avenue BBQ & Grille** restaurants in various locations in South Florida, including Lake Park, Wellington, Tequesta and Stuart, Florida, and the Hammerheads Sea Grilles of Wellington and Juno Beach. At all times relevant herein, Defendant **PARK AVENUE**'s Director of Operations was Defendant **CHRISTOPHER WALTERS**, who supervised the General Manager, Paul Davisson. Davisson in turn supervised the manager of the Lake Park restaurant, Defendant **JOHN ERNST**.

9. Plaintiff was recruited by Dean Lavallee from Bennigan's Restaurant in West Palm Beach, where she worked from 1983-1993, because of her loyalty and experience in the restaurant business. Plaintiff's husband, a Pratt-Whitney employee, and Plaintiff had been good friends with Defendant's owner, Dean Lavallee and his brother, Neil, for some years. Plaintiff's husband worked part-time four nights per week for Defendant.

3

10. When he hired her, Dean Lavallee represented to Plaintiff that she would "always have a job with Park Ave. forever..." This promise was made as both her employer and as her friend. Based upon these promises and inducements, Plaintiff resigned from her former position at Bennigan's where she had remained for a year after beginning her employment at **PARK AVENUE**.

11. From April to October 1994, Plaintiff took a leave of absence due to the illness and death on August 23, 1994, of her husband from cancer.

12. On or about October 31, 1994, Plaintiff returned to work for Defendant **PARK AVENUE** at Defendant's Wellington Store. Defendant needed someone in Wellington, and Plaintiff was hopeful that when she had an opportunity to return to the Lake Park Store that she would be able to prove her managerial skills and move into a management training program.

13. On or about May 1995, Plaintiff was requested by Dean Lavallee to transfer back to the Lake Park store because Defendant needed her more there, according to Lavallee.

14. On or about early 1996, Defendant **JOHN ERNST** arrived as the new assistant manager at the Lake Park store, having been promoted and transferred from Defendant's Stuart store.

15. Commencing with the arrival of Defendant **ERNST**, Plaintiff was subjected to a sexually hostile working environment perpetrated upon her by Defendant **ERNST** with the knowledge and acquiescence of the management and owners of Defendant **PARK AVENUE**.

16. During the course of Plaintiff's employment, Defendant **ERNST** routinely referred to Plaintiff as **"sweet tits."** His behavior was pervasive and ongoing on a daily basis. Defendant **ERNST** would also call Plaintiff and other female employees such derogatory and sexually demeaning names as **"stupid cunt," "whore," "slut,"** and **"fucking bitch."** When another female employee tried to laugh off his vulgarities or join in by retorting in kind, she was called into the office by Paul

4

Davisson, the General Manager, and Defendant **ERNST** and told to "clean up **her** act." Plaintiff repeatedly went to Paul Davisson for assistance in stopping Defendant **ERNST**'s behavior. She also complained to Dean Lavallee, the owner, and Defendant **CHRISTOPHER WALTERS**, the Director of Operations.

17. On or about the spring of 1996 Plaintiff was standing near the cash register and began walking toward the kitchen and office area. As Plaintiff was nearing the kitchen Defendant **ERNST**, the manager, came up to her, pinched her breasts and called her **"sweet tits."** When Plaintiff objected to this treatment, Defendant **ERNST** gyrated his hips and responded "you know you love it, Sherry."

18. When Plaintiff complained to Paul Davisson, General Manager, and advised him of Defendant **ERNST**'s behavior and asked Davisson to speak to **ERNST**, Davisson responded that he would. However, if he did, it had no effect. Defendant **ERNST** continued to call Plaintiff vulgar names, touch her and belittle her.

19. On or about July 1996, Plaintiff asked Davisson for more responsibility and managerial training. As a result, Plaintiff's position with Defendant **PARK AVENUE** was upgraded to Assistant Manager on Duty and regular head waitress. She was paid $5 per hour as a waitress, plus tips, and $10 per hour as assistant manager, bringing her wages up to approximately what she had been making at Bennigan's.

20. On or about March 1997 near the cashier stand, Defendant **ERNST** touched Plaintiff again and called her "sweet tits" in front of her cashiers. As Plaintiff was in charge of the cashiers, his behavior embarrassed and humiliated her.

5

21. Plaintiff objected to Defendant **ERNST**'s treatment each time and asked **ERNST** to watch his rude mouth. Plaintiff advised owner Dean Lavallee of the hostile working conditions in the restaurant several times, both at the office and once at his home.

22. Defendant **ERNST** condoned and encouraged sexually offensive and harassing language on the part of other male employees against Plaintiff and other female employees. For example, Plaintiff was referred to by employee Joe Rushak as a **"fat ass"** and **"garage door butt."**

23. The hostile working environment created by Defendant **ERNST**'s sexual harassment interfered with Plaintiff's work performance. She was unable to focus on performing to improve her position. It became a struggle every day to try to gain respect. Plaintiff began seeing a counselor and was often upset and crying.

24. On or about late February or early March 1997, Plaintiff asked Paul Davisson to speak again to Defendant **ERNST** about his behavior, but received no comment. Plaintiff again complained to the owner, Dean Lavallee. Plaintiff told Lavallee, "John is disgusting. Why do you tolerate his behavior? Don't use the excuse that Neil [Lavallee (Dean's deceased brother)] ran the store that way. John is not Neil by far, nor should I have to listen to it." Lavallee promised to see what he could do but nothing occurred to change Defendant **ERNST**'s demeaning sexual behavior and harassment.

25. On or about May 1997, Plaintiff was sitting at a table in the restaurant with her college-aged daughter and two friends. As Plaintiff was visiting with them, the food service person, Joe Rushak, approached Plaintiff and called, "Hey, sweet tits." Plaintiff's daughter objected, saying, "Don't talk to my mom that way." Defendant **ERNST** then approached and replied, "She likes it when I do." Plaintiff responded, "No, I don't John!" Rushak then grabbed Plaintiff's arm and

6

squeezed hard. Plaintiff complained that it hurt, whereupon Defendant **ERNST** grabbed Plaintiff's arm also. Plaintiff told Defendant **ERNST** and Rushak that she bruised easily, to which **ERNST** responded sarcastically, "Oh, poor baby." As a result of Defendant **ERNST**'s assault, Plaintiff suffered black and blue bruise marks on her left arm. Plaintiff complained to Paul Davisson and advised him what Defendant **ERNST** had done and again asked him to speak to **ERNST**, all to no avail.

26. On or about the Spring of 1997 and at various other times throughout the period of Plaintiff's employment, Defendant **ERNST**, without any encouragement or inducement from Plaintiff, forcibly slapped and struck Plaintiff's buttocks against her will as she stood near or walked past him while in the presence of patrons and customers of the restaurant. On other occasions, Defendant **ERNST** would grab and touch Plaintiff around the waist without her consent as she stood near the table at which he was sitting.

27. On or about October 1997, after a meeting in which owner Dean Lavallee advised the staff that the company was considering moving the Lake Park Store to a nicer location, there appeared an article in a local Lake Park newspaper with a picture of the **PARK AVENUE** billboard and a "Sorry to see you leave" story. Defendant **ERNST** cut out the article, whited out the billboard and wrote in, **"TOPLESS TONIGHT - SHERRY BERARD"** and put it up near the cash register. A true copy of the altered article is attached hereto as **Exhibit "A"**. Plaintiff immediately objected to Defendant **ERNST**. **ERNST** just laughed. Plaintiff also objected to Davisson that same night. She brought the article into the office and showed Davisson. However, nothing to Plaintiff's knowledge was said to Defendant **ERNST**.

7

28. Shortly after this incident, when Plaintiff went to the main office to ask for a raise, she told owner Dean Lavallee about it, but again nothing was done, and Lavallee denied Plaintiff a raise.

29. On or about November 15, 1997, Plaintiff was terminated from her position for allegedly being insubordinate to Defendant **JOHN ERNST** during an incident in which Defendant **ERNST** ejected a patron and his guests from the restaurant. Said reason for Plaintiff's termination was false and a pretext for Defendants to terminate Plaintiff because of her sex and her continuing complaints about the sexually hostile working environment to which she was subjected.

30. During all times relevant hereto, Defendant **PARK AVENUE** had no policy prohibiting sexual harassment posted or distributed to its employees, nor did it exercise reasonable care to prevent and correct promptly any sexually harassing behavior. Furthermore, Defendant did not provide employees with any effective mechanism to complain about a sexually hostile working environment or acts of sexual harassment by employees or supervisors.

31. As a direct and proximate result of the acts of Defendant **ERNST** and **PARK AVENUE**, Plaintiff has suffered and continues to suffer loss of income, and has suffered and continues to suffer distress, mental anguish, anxiety, depression, fatigue, humiliation and embarrassment.

## COUNT I
### [ VIOLATION OF TITLE VII - SEXUAL HARASSMENT ]

32. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-31 above, as if fully set forth herein.

33. The sexually hostile work environment and sexual harassment of Plaintiff at the hands of Defendant JOHN **ERNST** and others as set forth above and Defendant **PARK AVENUE's**

condonation of that harassment after Plaintiff repeatedly complained to her superiors about it was in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq.

34. Plaintiff has satisfied all the procedural and administrative requirements set forth in Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-5, in particular:

    a) Plaintiff filed a timely written charge of discrimination with the United States Equal Employment Opportunity Commission.

    b) Plaintiff received a notice of right to sue from the EEOC on August 3, 1998 (copy attached hereto as **Exhibit "B"**).

    c) The Complaint herein was filed with this Court within ninety (90) days from the receipt of the notice of right to sue set forth in Paragraph (b) above.

35. The proper venue of this action is in this Court as Plaintiff was employed in Palm Beach County and the discriminatory treatment against Plaintiff took place within this county.

36. Plaintiff has suffered and will continue to suffer irreparable injury caused by Defendant's illegal conduct.

WHEREFORE, Plaintiff respectfully invokes the remedial powers of this Court as provided in Title VII of the Civil Rights Act of 1964 and 1991, 42 U.S.C. §2000e et seq., and prays for the following relief as to Count I:

    a. That Defendant **PARK AVENUE** be permanently enjoined from discriminating against Plaintiff on any basis forbidden by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq.

b. That Defendant **PARK AVENUE** be ordered to reinstate the Plaintiff into the position she occupied prior to termination effective November 15, 1997, with full salary, seniority, and benefits running from that date.

c. That Defendant **PARK AVENUE** be ordered to compensate, reimburse, and make whole the Plaintiff for all the benefits Plaintiff would have received had it not been for Defendant's illegal actions including, but not limited to: pay, benefits, training, promotions and seniority. Plaintiff should be accorded said benefits illegally withheld from November 15, 1997, until the date Plaintiff is tendered substantially equivalent employment, with interest on the above withheld amounts to the date of payment.

d. That the Court award Plaintiff compensatory and punitive damages as specified in the Civil Rights Act of 1991.

e. That the Court grant such additional equitable relief as is proper and just.

f. That the Court award to Plaintiff the costs and expenses of this action and award to Plaintiff a reasonable attorney's fee as provided in Section 760(k) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-5(k). Plaintiff further demands trial by jury on Count I.

## COUNT II
### [ASSAULT AND BATTERY]

37. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-31 above, as if fully set forth herein.

38. This is an action for damages in excess of $15,000.00.

39. During the period from January 1996 to at least November 15, 1997, Defendant JOHN ERNST engaged in the active management, control and direction of Defendant **PARK AVENUE**'s restaurant located at 754 Park Avenue, Lake Park, Florida.

40. In all manners and things subsequently alleged, Defendant **ERNST** was acting on behalf of Defendant **PARK AVENUE**, within the scope of Defendant **ERNST**'s agency, employment, service and authority, both express and implied.

41. On or about the Spring of 1996, while Plaintiff was in the performance of Plaintiff's duties in the above-mentioned restaurant, Defendant **ERNST** without any encouragement or inducement by Plaintiff, violently and forcibly placed his hands on Plaintiff's breasts and other private parts of her body and forcibly pinched and fondled Plaintiff against her will.

42. On or about May 1997, Plaintiff was sitting at a table in the restaurant with her college-aged daughter and two friends. As Plaintiff was visiting with them, the food service person, Joe Rushak, approached Plaintiff and called, "Hey, sweet tits." Plaintiff's daughter objected, saying, "Don't talk to my mom that way." Defendant **ERNST** then approached and replied, "She likes it when I do." Plaintiff responded, "No, I don't John!" Rushak then grabbed Plaintiff's arm squeezing hard. Plaintiff complained that it hurt, whereupon Defendant **ERNST** grabbed Plaintiff's arm also. Plaintiff told Defendant **ERNST** and Rushak that she bruised easily, to which **ERNST** responded sarcastically, "Oh, poor baby." As a result of Defendant **ERNST**'s assault and battery, Plaintiff suffered black and blue bruise marks on her left arm. Plaintiff complained to Paul Davisson and advised him what Defendant **ERNST** had done and again asked him to speak to **ERNST**, all to no avail.

11

43. On or about the Spring of 1997 and various other times throughout the period of Plaintiff's employment of Plaintiff's employment Defendant **ERNST**, without any encouragement or inducement from Plaintiff, forcibly slapped and struck Plaintiff's buttocks against her will as she stood near or walked past him while in the presence of patrons and customers of the restaurant. On other occasions, Defendant **ERNST** would offensively grab and touch Plaintiff around the waist without her consent as she stood near the table at which he was sitting. Plaintiff could not go to work without being in constant and imminent fear of being offensively touched by Defendant **ERNST**.

44. As a direct result of Defendant **ERNST**'s actions, Plaintiff was greatly humiliated and embarrassed, endured mental and physical suffering, and was, and still is, nervous and distraught, all to Plaintiff's damage.

WHEREFORE, Plaintiff requests judgment on Count II against Defendants **ERNST** and **PARK AVENUE**, jointly and severally, for compensatory and punitive damages in a sum within the jurisdiction limits of this Court, together with costs of suit, and such further relief as the Court deems proper.

Plaintiff also demands trial by jury on Count II.

## COUNT III
### [ ASSAULT ]

45. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-31 above, as if fully set forth herein.

46. This is an action for damages in excess of $15,000.00.

47. At all relevant times herein, Defendant **CHRISTOPHER WALTERS,** as Defendant **PARK AVENUE's** Director of Operations, engaged in the active management, control and direction of Defendant **PARK AVENUE**'s restaurant located at 754 Park Avenue, Lake Park, Florida.

48. In all manners and things subsequently alleged, Defendant **WALTERS** was acting on behalf of Defendant **PARK AVENUE**, within the scope of Defendant **WALTERS**'s agency, employment, service and authority, both express and implied.

49. On or about August or September 1997, following a robbery of the Lake Park Store while Plaintiff was on duty, Defendant **WALTERS** summoned Plaintiff to speak with her concerning the precautions to be taken to avoid future occurrences. Plaintiff was on duty as a waitress and assistant manager at the time and Walters sat with her at a booth in the restaurant. As he was speaking to her, Plaintiff momentarily glanced away from him to make a quick check of the room to see if any customers needed service. Defendant **WALTERS**, upon observing Plaintiff look away from him, became enraged and leaned across the table with his hand and arm outstretched pointing and shaking into Plaintiff's face and angerly screamed at Plaintiff in a loud voice capable of being heard throughout the room, "I'm talking to you!! I don't want you looking away when I'm talking to you!!!" Plaintiff was placed in imminent fear of being struck and battered by Defendant **WALTERS**.

50. On or about November 15, 1997, at the time that Defendants **WALTERS** and **ERNST** informed Plaintiff that she was being terminated for alleged insubordination, they summoned her again to talk. Plaintiff was on duty as a waitress and assistant manager at the time and **WALTERS** and **ERNST** sat with her at a booth in the restaurant. This time Plaintiff's back was to the room. As **WALTERS** was speaking to her, Plaintiff momemtarily turned her head around

away from him to make a quick check of the room to see if any customers need service. Again, Defendant **WALTERS**, upon observing Plaintiff look away from him, became enraged and leaned across the table with his hand and arm outstretched and shaking at Plaintiff only inches from her face and angerly and belligerently screamed at Plaintiff in a loud voice capable of being heard throughout the room, "Don't look away from me, I'm talking to you!!" Plaintiff was again placed in imminent fear of being struck and battered by Defendant **WALTERS** and began crying.

51. As a direct result of Defendant **WALTERS'** actions, Plaintiff was greatly humiliated and embarrassed, endured mental and physical suffering, and was, and still is, nervous and distraught, all to Plaintiff's damage.

WHEREFORE, Plaintiff requests judgment on Count III against Defendants **WALTERS** and **PARK AVENUE**, jointly and severally, for compensatory and punitive damages in a sum within the jurisdiction limits of this Court, together with costs of suit, and such further relief as the Court deems proper.

Plaintiff also demands trial by jury on Count III.

## COUNT IV
### [NEGLIGENT SUPERVISION AND RETENTION]

52. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-44 above, as if fully set forth herein.

53. Defendant **PARK AVENUE** had a duty to supervise Defendant **ERNST** in order to prevent and to stop his actions constituting sexual harassment and battery under Florida and federal law.

54. Defendant **PARK AVENUE** breached its duty to supervise Defendant **ERNST** in order to prevent and to stop his actions constituting sexual harassment and battery under Florida and federal law.

55. Defendant **PARK AVENUE** knew or should have known of prior and contemporaneous misconduct of a similar nature by Defendant **ERNST** with other female employees.

56. Defendant **PARK AVENUE** knew or should have known of Defendant **ERNST**'s unlawful harassment of and battery against Plaintiff.

57. Defendant **PARK AVENUE** had a duty to terminate the employment of Defendant **ERNST** or otherwise discipline him for his unlawful conduct.

58. Defendant **PARK AVENUE** breached its duty to terminate the employment of Defendant **ERNST** or otherwise discipline him for his unlawful conduct.

59. As a direct and proximate result of the foregoing failures to supervise and terminate, Plaintiff has suffered mental anguish, emotional distress, expense, loss of employment and wages, embarrassment, and loss of enjoyment of life.

WHEREFORE, Plaintiff requests judgment on Count IV against Defendant **PARK AVENUE**, for compensatory and punitive damages in a sum within the jurisdiction limits of this Court, together with costs of suit, and such further relief as the Court deems proper.

Plaintiff also demands trial by jury on Count IV.

## COUNT V
### [INVASION OF PRIVACY]

60. Plaintiff realleges and reaffirms the allegations contained in paragraphs 1 through 44 above, as if fully set forth herein.

61.  The actions taken by Defendant, **JOHN ERNST**, acting individually and within the scope of his employment with Defendant, **PARK AVENUE**, to intrude upon Plaintiff's physical solitude and seclusion by invading her personal bodily integrity through touching and fondling the private parts of her body in a sexually demeaning manner, invaded Plaintiff's privacy, were malicious, and were made in complete disregard of their obviously harmful effect and offensiveness to Plaintiff's psychological integrity and emotional fitness.

62.  The invasion of Plaintiff's physical solitude and seclusion by Defendant **ERNST** deprived Plaintiff of her right to be secure and undisturbed in her personal life and affairs, and subjected Plaintiff to the inquiry and humiliation of her fellow employees, friends, and relatives causing Plaintiff to suffer severe mental anguish and torment, loss of sleep, and similar effects, and continuing humiliation, shame, and embarrassment.

63.  Plaintiff has suffered and will continue to suffer financial damage in amounts which cannot now be accurately ascertained but which will be the subject of proof upon trial of this action.

64.  Because the actions referred to herein were done intentionally, maliciously, and with total disregard for their ultimate effect on the Plaintiff, Defendants **PARK AVENUE** and **ERNST** should also be assessed punitive damages in an amount commensurate with the maliciousness of the actions involved, to deter any such conduct in the future.

WHEREFORE, Plaintiff demands judgment against the Defendants, **PARK AVENUE** and **ERNST**, jointly and severally, for compensatory and punitive damages in an amount to be proved at the time of trial, the costs of this action and for such other and further relief as the court may deem just and proper.

Plaintiff further demands trial by jury on Count V.

Respectfully submitted:

**SHERRY BERARD**
By Counsel

*(signature)*

**FREDERICK W. FORD**, Esquire
Florida Bar No: 842435
900 East Indiantown Road
Suite 216
Jupiter, Florida 33477
(561) 745-1998
(561) 745-9976 (fax)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was furnished, via U.S. Mail to Margaret L. Cooper, Esquire, PO Box 3475, West Palm Beach, FL 33402-3475, and Michael McAuliffe, Esquire, 625 North Flagler Drive, Suite 700, West Palm Beach, FL 33401, on this 19th day of October, 1999.

*(signature)*
Frederick W. Ford, Esquire